# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT
_____

### No. 11-1774
_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
          Plaintiff-Appellant,

v.

UNITED AIRLINES, INC.,
          Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Northern District of Illinois
Judge Harry D. Leinenweber
_____

## PETITION FOR REHEARING EN BANC OF THE
## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
_____

P. DAVID LOPEZ
General Counsel

LORRAINE C. DAVIS
Acting Associate General Counsel

DANIEL T. VAIL
Acting Assistant General Counsel

BARBARA L. SLOAN
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Office of General Counsel
131 M Street, N.W., 5th Floor
Washington, D.C.  20507
(202) 663-4721
fax: (202) 663-7090
barbara.sloan@eeoc.gov

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................. ii

RULE 35(b) STATEMENT .................................................................. 1

FACTUAL STATEMENT ..................................................................... 2

ARGUMENT

    Rehearing En Banc is Warranted Because the Panel Decision
    Is Inconsistent with Barnett as Well as the Language and Purpose
    of the ADA's Reassignment Provision and En Banc Decisions
    of Two Circuits. .......................................................................... 6

CONCLUSION ..................................................................................... 15

CERTIFICATE OF COMPLIANCE ...................................................... 16

ADDENDUM

    Panel Decision

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## CASES

Aka v. Washington Hospital Center,
　156 F.3d 1284 (D.C. Cir. 1998) ................................................................ passim

American Tobacco Co. v. Patterson,
　456 U.S. 63, 68 (1982) .............................................................................. 11

Colby v. J.C. Penney Co.,
　811 F.2d 1119 (7th Cir. 1987) .................................................................. 9

Craig v. Potter,
　90 F. App'x 160 (7th Cir. Feb. 20. 2004) (unpublished) .......................... 5, 9-10

Corley v. United States,
　556 U.S. 303 (2009) .................................................................................. 13

Dalton v. Suburu-Isuzu Automotive,
　141 F.3d 667 (7th Cir. 1998) .................................................................... 6, 11

Eckles v. Consolidated Rail Corp.,
　94 F.3d 1041 (7th Cir. 1996) .................................................................... 10

EEOC v. United Airlines,
　No. 11-1774 (7th Cir. March 7, 2012) ...................................................... 2-5

EEOC v. Humiston-Keeling,
　227 F.3d 1024 (7th Cir. 2002) .................................................................. passim

Gile v. United Airlines,
　95 F.3d 492 (7th Cir. 1996) ...................................................................... 15

Huber v. Wal-Mart Stores,
　486 F.3d 480 (8th Cir.),
　cert. granted in part, 552 U.S. 1074 (2007),
　cert. dismissed on stipulation of the parties,
　552 U.S. 1136 (2008) ................................................................................ 5, 9

King v. City of Madison,
    550 F.3d 598 (7th Cir. 2008) ..................................................... 5, 9-10

Mays v. Principi,
    301 F.3d 866 (7th Cir. 2002) ............................................ 1, 4-5, 9-10

Smith v. Midland Brake,
    180 F.3d 1154 (10th Cir. 1999) (en banc) ................................. passim

United States v. Berkos,
    543 F.3d 392, 396 (7th Cir. 2008) ................................................. 13

US Airways v. Barnett,
    535 U.S. 391 (2002).................................................................. passim

**STATUTES and RULES**

42 U.S.C. §12101(6) .......................................................... 12

Title I of the Americans with Disabilities Act,
    42 U.S.C. §§12112 et seq........................................................ passim

42 U.S.C. §12111(8) ............................................................ 14

42 U.S.C. §12111(9) .................................................... 7, 8, 11

42 U.S.C. §12112(b)(5) .................................................. 11, 14

Federal Rule of Civil Procedure 12(b)(6) ........................... 2

**OTHER AUTHORITY**

EEOC Enforcement Guidance on Reasonable Accommodation
& Undue Hardship Under the ADA, No. 915.002 (Oct. 17, 2002),
    available at www.eeoc.gov/policy/docs/accommodation/html. .................. 2, 15

H.R. Rep. No. 485 (II), 101 Cong., 2d Sess. (1990),
    reprinted at 1990 U.S.C.C.A.N. 303 ............................................... 12

## RULE 35(b) STATEMENT

The Equal Employment Opportunity Commission petitions for rehearing en banc because the panel decision and underlying authority, <u>EEOC v. Humiston-Keeling</u>, 227 F.3d 1024 (7th Cir. 2000), and <u>Mays v. Principi</u>, 301 F.3d 866 (7th Cir. 2002), are inconsistent with the Supreme Court's decision in <u>US Airways v. Barnett</u>, 535 U.S. 391 (2002).  Contrary to this Court's precedent, <u>Barnett</u> holds that preferences are required under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12112 <u>et seq.</u>, and assumes that "normally" a request for reassignment as an accommodation is "reasonable" even if it violates a disability-neutral policy (other than a seniority system).  535 U.S. at 397-98, 401-05.  Consideration by the full Court is needed to conform this Court's caselaw with Supreme Court authority.

Rehearing en banc is also warranted because this case presents an issue of exceptional importance:  whether an employer violates the ADA by requiring an employee to compete for vacancies when, due to disability, the employee can no longer do his current job even with reasonable accommodation.  The panel decision conflicts with en banc decisions of two sister circuits which hold that if reassignment is needed as a reasonable accommodation, a competitive transfer policy does not satisfy the ADA's reasonable accommodation duty.  <u>See</u> <u>Smith v. Midland Brake</u>, 180 F.3d 1154 (10th Cir. 1999) (en banc); <u>Aka v. Washington Hosp. Ctr.</u>, 156 F.3d 1284 (D.C. Cir. 1998) (en banc).

## FACTUAL STATEMENT

The EEOC alleged that United Airlines ("UAL") violates the ADA by not reassigning employees to vacant positions for which they are qualified when the employees can no longer do their current jobs due to disability, and by instead requiring the employees to compete for the vacant jobs.  As support, the EEOC cited Barnett, 535 U.S. 391 (2002); and the en banc decisions in Smith, 180 F.3d at 1164-66, and Aka, 156 F.3d at 1302, 1304; as well as the language and structure of the ADA and EEOC's Enforcement Guidance on Reasonable Accommodation & Undue Hardship Under the ADA, No.915.002, at Q/A #29 (10/ 17/2002), available at www.eeoc.gov/policy/docs/accommodation.html.  Initially filed in San Francisco, the suit was transferred on UAL's motion to the Northern District of Illinois, where it was dismissed under Rule 12(b)(6).  The court there reasoned that, under binding circuit precedent, Humiston-Keeling, 227 F.3d 1024, a competitive transfer policy like UAL's does not violate the ADA.  See EEOC v. United Airlines, No. 11-1774 (7th Cir. Mar. 7, 2012) ("slip op.") at 2-3.

On appeal, the panel of this Court affirmed, finding that Humiston-Keeling was "directly on point" and too well settled to be overruled by the panel.  Slip op. at 3, 9.  The panel "strongly recommend[ed] en banc consideration," however, because "the logic of EEOC's position on the merits, although insufficient to justify departure by th[e] panel from the principles of stare decisis, is persuasive

2

with or without <u>Barnett</u>."  <u>Id.</u> at 9; <u>see also</u> <u>id.</u> at 2 (suggesting that the Court en banc "might reconsider the impact of <u>Barnett</u> on <u>Humiston-Keeling</u>").

The panel noted that the Court in <u>Humiston-Keeling</u> rejected the EEOC's argument that, absent undue hardship, the "'reassignment form of reasonable accommodation'" requires that a qualified disabled employee "be advanced over a more qualified nondisabled person."  Slip op. at 4 (citing <u>Humiston-Keeling</u>, 227 F.3d at 1026).  Instead, the Court held, "the 'ADA does not require an employer to reassign a disabled employee to a job for which there is a better applicant, provided it's the employer's consistent and honest policy to hire the best applicant for the particular job.'"  <u>Id.</u> (citing 227 F.2d at 1026).  The Court took this position, the panel noted, even though it knew that the en banc Tenth and D.C. Circuits, after thoroughly analyzing the statutory language and purpose, had reached the opposite result.  <u>Id.</u> at 8.  Thus, the panel stated, while the EEOC's interpretation of the ADA was "likely" "more supportable," the panel was bound by this Court's "controlling" precedent unless the EEOC could show that <u>Humiston-Keeling</u> was "inconsistent with an on-point Supreme Court decision."  <u>Id.</u> at 4.

The panel acknowledged EEOC's contention that <u>Barnett</u>, which addresses "reassignment in the context of a seniority system," so "undercuts the reasoning of <u>Humiston-Keeling</u>" that the case should be overruled.  Slip op. at 4-5.  <u>Barnett</u>, the panel noted, "flatly contradicted much of the language of <u>Humiston-Keeling</u>" and

3

rejected US Airways's argument, based on <u>Humiston-Keeling</u>, that employers need not "grant a requested accommodation that would violate a disability-neutral rule" since the "ADA is 'not a mandatory preference act' but only a 'non-discrimination statute.'" <u>Id.</u> at 5-6 (citing 535 U.S. at 397). According to <u>Barnett</u>, the "argument 'fails to recognize what the [ADA] specifies, namely, that preferences will sometimes prove necessary to achieve the Act's basic equal opportunity goal.'" <u>Id.</u> at 6 (citing 535 U.S. at 397). The panel explained, "Merely following a 'neutral rule' did not allow US Airways to claim an 'automatic exemption' from the [ADA's] accommodation requirement. Instead, US Airways prevailed because its situation satisfied a much narrower exception based on the hardship that would be imposed on an employer utilizing a seniority system." <u>Id.</u>

However, the panel stated, "[w]hile EEOC's argument may be persuasive," the Court already "considered <u>Barnett</u>'s relationship to <u>Humiston-Keeling</u>, albeit in an abbreviated fashion without the benefit of briefing," in <u>Mays v. Principi</u>, 301 F.3d 866 (7th Cir. 2002). Slip op. at 6. Citing <u>Humiston-Keeling</u>, <u>Mays</u> held that the employer could prefer a better qualified applicant over the qualified disabled plaintiff. <u>Mays</u> also stated that the "recently handed down" <u>Barnett</u> decision "holds that an employer is not required to give a disabled employee superseniority to enable him to retain his job when a more senior employee invokes an entitlement to it conferred by the employer's seniority system." <u>Id.</u> at 7 (citing 301

4

F.3d at 872, omitting citation).  Then, equating "better qualified" with "more senior" and "the employer's normal method of filling vacancies" (there, a best-qualified-selection policy) with "seniority systems," Mays concluded that Barnett "actually bolstered Humiston-Keeling."  Id. at 6-7 (citing 301 F.3d at 871).

The panel noted EEOC's argument that by erroneously equating a seniority system with a best-qualified-selection policy, "the Mays Court so enlarges the narrow exception ... in Barnett as to swallow the rule."  Slip op. at 7 (also noting EEOC's references to "the relative rarity of seniority systems" and "the distinct challenges of mandating reassignment" where employees are already entitled to specific jobs due to seniority).  But, the panel stated, two post-Mays decisions also cite Humiston-Keeling, albeit without "detailed analysis" or mentioning Barnett.  Id. at 7-8 & n.2 (citing Craig v. Potter, 90 F. App'x 160 (7th Cir. Feb. 20, 2004); King v. City of Madison, 550 F.3d 598 (7th Cir. 2008)).  In the panel's view, despite their brevity, the "mere existence and consistent interpretations [of these cases] compel [the] court to find that Humiston-Keeling remains good law."  Id. at 8; see also id. at 9 (adding that although overruling Humiston-Keeling would not eliminate the circuit split, since the Eighth Circuit in Huber v. Wal-Mart Stores, 486 F.3d 480 (8th Cir. 2007), adopted Humiston-Keeling (albeit "without analysis"), "there is no harm in lessening this split if, in fact, Barnett undermines Humiston-Keeling").

## ARGUMENT

**Rehearing En Banc is Warranted Because the Panel Decision Is Inconsistent with <u>Barnett</u> as Well as the Language and Purpose of the ADA's Reassignment Provision and En Banc Decisions of Two Circuits.**

1. Rehearing en banc is warranted because the continued viability of <u>Humiston-Keeling</u> and other caselaw on which the panel decision is based is, at the very least, placed in serious doubt by the Supreme Court's decision in <u>Barnett</u>.

<u>Humiston-Keeling</u> is premised on two related assumptions:  (1) The ADA does not mandate preferential treatment of disabled employees; and (2) Employers need not provide transfers that would "violate a legitimate, nondiscriminatory policy," such as a best-qualified-selection policy.  <u>See</u> 227 F.3d 1028-29 (citing, <u>e.g.</u>, <u>Dalton v. Suburu-Isuzu Auto.</u>, 141 F.3d 667, 679 (7th Cir. 1998)).  But the Supreme Court in <u>Barnett</u> flatly rejected both assumptions.

Like <u>Humiston-Keeling</u>, <u>Barnett</u> concerned a request for reassignment where the employee was otherwise qualified for the new position but the placement would violate a disability-neutral policy — there, a seniority system.  <u>See</u> <u>Barnett</u>, 535 U.S. at 394-95.  Relying in part on <u>Humiston-Keeling</u>, US Airways argued that a seniority system or other disability-neutral workplace policy "virtually always trumps a conflicting accommodation request" because violating such a policy would constitute a "preference," and the ADA "does not ... require an employer to

6

grant preferential treatment" but "only 'equal' treatment for those with disabilities." Id. at 396-97.

The Barnett Court disagreed. The Court reasoned, "By definition, any special 'accommodation' requires the employer to treat an employee with a disability differently, i.e., preferentially. And the fact that the difference in treatment violates an employer's disability-neutral rule cannot by itself place the accommodation beyond the Act's potential reach." 535 U.S. at 397. To the contrary, the Court reasoned, "[m]any employers will have neutral rules governing the kinds of actions most needed to reasonably accommodate a worker with a disability," citing examples from the non-exclusive list of accommodations in the ADA's text. Id. at 397-98 (citing 42 U.S.C. §12111(9), which includes reassignment). Yet, the Court continued, Congress "said nothing suggesting that the presence of such neutral rules would create an automatic exemption." Id. at 398. Thus, "the nature of the 'reasonable accommodation' requirement, the statutory examples, and the Act's silence about the exempting effect of neutral rules" convinced the Court that the mere fact that "an accommodation would provide a 'preference' — in the sense that it would permit the worker with a disability to violate a rule that others must obey — cannot, in and of itself,

automatically show that the accommodation is not 'reasonable.'" <u>Id.</u> (emphasis in original).[1]

Turning to Barnett's arguments, the Court stated that a plaintiff opposing summary judgment "need only show that his requested accommodation seems reasonable on its face, <u>i.e.</u>, ordinarily or in the run of cases." 535 U.S. at 401. The Court also assumed that "normally" a request for reassignment — an accommodation expressly listed in the ADA — "would be reasonable within the meaning of the statute." 535 U.S. at 403 (citing §12111(9)). However, it would likely not be reasonable in Barnett's case because of "one circumstance, namely, that the assignment would violate the rules of a seniority system." <u>See</u> <u>id.</u> The Court based this exception for seniority systems on the special status that seniority systems hold in American labor law and on their importance in labor-management relations. <u>Id.</u> at 403-05 (noting that without such an exception, "employees'

---

[1] UAL here argued that <u>Barnett</u> and <u>Humiston-Keeling</u> can both be read to mean that employers need only provide accommodations that clear away obstacles to hiring the best applicant. That was the view of Justice Scalia in his dissent, but not of the majority. <u>See</u> 535 U.S. at 413-20 (Scalia, J., dissenting). Justice Scalia would have held, <u>e.g.</u>, that employers must only "modify or remove (within reason) policies and practices that burden a disabled person 'because of [his] disability.'" <u>Id.</u> at 413. He also concluded that "the ADA does not mandate exceptions to a 'legitimate nondiscriminatory policy'" such as a best-qualified-selection policy. 535 U.S. at 416 (citing, <u>e.g.</u>, <u>Humiston-Keeling</u>, 227 F.3d at 1028-29). He acknowledged, however, that his views did not prevail at the Court. <u>Id.</u> at 417. <u>Accord</u> 535 U.S. at 398 (rejecting Justice Scalia's "contrary" position).

expectations of consistent, uniform treatment upon which the seniority systems benefits depend" would be undermined).

By contrast, the disability-neutral policy here, as in Humiston-Keeling, is a best-qualified-selection policy which, unlike a seniority system, has no such special status in American labor law.  Under Barnett, therefore, despite the policy, a UAL employee's request for reassignment to a vacant position for which he or she is qualified would be reasonable "ordinarily or in the run of cases."  And since this result conflicts with the result under Humiston-Keeling, that case should be overruled to ensure consistency with Supreme Court caselaw. [2]

Notwithstanding Barnett, the panel here concluded that it was bound by Humiston-Keeling, reasoning that since Barnett was decided, the Court has cited Humiston-Keeling favorably three times and, in one instance, briefly addressed Barnett.  Slip op. at 6-8 (citing Mays, Craig, and King).  But these cases in fact simply confirm the need for en banc review.

First, none of the briefing in those cases even mentioned Barnett, let alone explored its interaction with Humiston-Keeling.  And since the King and Craig

---

[2]  While overruling Humiston-Keeling would not eliminate the circuit split (given Huber), even lessening the split may benefit national employers like UAL who, at present, must comply, e.g., with Smith in Denver and Humiston-Keeling in Illinois. See Colby v. J.C. Penney Co., 811 F.2d 1119, 1124 (7th Cir. 1987) (circuit splits place parties in "impossible position" of trying to meet two standards).  And although UAL opined that the Aka/Smith standard is unworkable, employers in the Tenth and D.C. Circuits have followed it for years.

decisions are likewise silent, those panels may not have focused on whether

Humiston-Keeling and related precedent remain good law in light of Barnett.

Second, although Mays states that Barnett "bolstered" the rule in Humiston-Keeling, 301 F.3d at 872, Mays does not analyze the issue in any depth. Instead, the decision simply assumes that seniority systems are indistinguishable from best-qualified-selection policies, and that under Barnett, as under Humiston-Keeling, employers need not reassign employees as a reasonable accommodation in violation of any such policy. See id. Mays never addresses Barnett's discussion of preferences or its presumption that a reassignment is appropriate even if it would violate a disability-neutral workplace policy (other than a seniority system).

The impact of Barnett on Humiston-Keeling deserves more thorough analysis. There are obvious, material differences between seniority systems and best-qualified-selection policies. As this Court has recognized, for example, under a seniority system, the most senior employee typically has a legally enforceable right to a specific position. See Eckles v. Consol. Rail Corp., 94 F.3d 1041, 1047 (7th Cir. 1996). That is not the case with a best-qualified-selection policy. Nor does Barnett in any way indicate that the exception it carved out for seniority systems extends to all ordinary workplace policies including best-qualified-selection policies. (In fact, Barnett suggests the opposite – i.e., that seniority systems are largely sui generis.) Moreover, given the prevalence of best-qualified-

10

selection policies, it seems unlikely that Congress would have gone to the trouble of expressly identifying "reassignment" as a reasonable accommodation if it intended to permit employers so easily to avoid providing the accommodation simply by invoking the neutral policy.

In short, there is ample reason to question <u>Mays</u>'s analysis. This Court should therefore accept the panel's invitation and rehear this case en banc.

2. Rehearing en banc is also warranted because, as the Tenth and D.C. Circuits recognized, the better reading of the ADA — a reading consistent with the language and purpose of the reassignment provision, as well as the overall structure of the statute — is that a competitive transfer policy like UAL's may not satisfy an employer's ADA duty to provide reasonable accommodation.

The "starting point" for construing a statute is the language employed by Congress. <u>American Tobacco Co. v. Patterson</u>, 456 U.S. 63, 68 (1982) (adding that undefined terms should be given their "ordinary meaning") (citation omitted). Under the ADA, an employer's duty reasonably to accommodate disabled employees expressly includes "reassignment to a vacant position" for which the employee is qualified. <u>See</u> 42 U.S.C. §§12111(9), 12112(b)(5)(A). As this Court has recognized, "the option of reassignment is particularly important when the employee is unable to perform the essential functions of his or her current job" even with other reasonable accommodation. <u>Dalton</u>, 141 F.3d at 677.

11

Simply allowing employees to compete for a vacant position, however, would not be considered a "reassignment" under any ordinary meaning of the word.  The core word "assign" means "to appoint."  <u>See</u> <u>Aka</u>, 156 F.3d at 1302-1304; <u>Smith</u>, 180 F.3d at 1164-65, 1167-68.  An employee who "on his own initiative" competes for and obtains a job elsewhere in the enterprise "would not be described as having been 'reassigned'; he may have changed jobs but he has done so under his own power rather than by being appointed to the new position."  <u>Aka</u>, 156 F.3d at 1304; <u>see also</u> <u>Smith</u>, 180 F.3d at 1164-65, 1167-68 (noting that the "literal language" in the statute is not "consideration of a reassignment" or permission to compete for jobs).

The purpose of the reassignment provision similarly confirms that Congress intended to invoke the ordinary meaning of the term "reassignment to a vacant position."  Congress recognized that persons with disabilities as a group "occupy an inferior status in our society and are severely disadvantaged socially [and] economically."  42 U.S.C. §12101(6).  Consistent with this Congressional finding, the reassignment provision is aimed at enabling employees, who would otherwise lose their jobs due to disability, to remain in the workforce as long as there is a vacancy for which they are qualified.  <u>See, e.g.</u>, H.R. Rep. No. 485(II), 101st Cong., 2d Sess. 63 (1990), <u>reprinted at</u> 1990 U.S.C.C.A.N. 303, 345.  Nothing in the statute or legislative history suggests that Congress intended that employees

12

needing reassignment as a reasonable accommodation should be required to compete for vacancies with employees who do not need such an accommodation.

The overall structure of the ADA also strongly suggests that reassignment must mean more than just competitive transfer. Reassignment is a form of reasonable accommodation. Yet, especially where, as here, the employer professes to select the most qualified applicant for any job, placing a disabled employee in a job for which he is the most qualified would not normally be considered an "accommodation," but simply non-disparate treatment. The ADA separately prohibits employers from discriminating against persons based on disability in the application for a vacant position. See Smith, 180 F.3d at 1164-65 (citing 42 U.S.C. §12112(a)). Thus, including reassignment in the duty to accommodate would be superfluous — mere surplusage — if it required only nondiscriminatory consideration in competition with other employees. Id. (provision would be "redundant"); accord Aka, 156 F.3d at 1304. Statutes should be construed so that no part is rendered meaningless, superfluous, or redundant. See, e.g., Corley v. U.S., 554 U.S. 303, 314 (2009); U.S. v. Berkos, 543 F.3d 392, 396 (7th Cir. 2008).

The Court in Humiston-Keeling reasoned that the provision would still have meaning because it would clarify that employers must do more than merely provide accommodations that enable employees to do their current jobs. 227 F.3d at 1027-28. But that is clear even without the "reassignment" provision.

13

Employers must reasonably accommodate "qualified" persons with a disability, and a person is "qualified" if, with or without accommodation, he can do the essential functions of the job he has or the job he "desires." 42 U.S.C. §§12111(8); 12112(b)(5). Taken together, these provisions confirm that the duty to accommodate extends to prospective positions — e.g., an initial placement, a promotion, or, as here, a reassignment. See Smith, 180 F.3d at 1161 (discussing §12111(8)); Aka, 156 F.3d at 1301 (same).

Moreover, and significantly, Humiston-Keeling nowhere takes account of the plain language and purpose of the reassignment provision. The decision, instead, is premised largely on assumptions from prior decisions — that the ADA does not require "preferences" or transfers in violation of an employer's disability-neutral policy. See 227 F.3d at 1028 (citing cases). As noted above, however, such assumptions were soundly rejected in Barnett.

Furthermore, while Humiston-Keeling expressed concern that reassignment would constitute an "unreasonable imposition" on employers, in fact, the duty to reassign is sharply limited.[3] Among other things, reassignment need not be offered to prospective employees or to an employee who is entitled to a different job by

---

[3] UAL, cued by Humiston-Keeling, 227 F.3d at 1027-28, argued that this rule would require reassigning employees who are only "minimally qualified." UAL Brief at 22. Since UAL itself sets the qualification standards for its jobs, however, anyone meeting those standards should be fully capable of doing the job well.

reason of seniority or who can be accommodated in his current job.  Nor need the

employer bump another employee, create a new position, promote the employee,

violate the terms of a seniority system, or offer a job for which the employee is not

fully qualified.  Reassignment is, in short, an accommodation of last resort.  See

EEOC Guidance at Q/A #24.  Finally, if the employer can show that a specific

reassignment would result in undue hardship, the employer need not offer that

accommodation.  See Gile v. United Airlines, 95 F.3d 492, 499 (7th Cir. 1996).

In sum, this Court's caselaw conflicts with Supreme Court precedent; cannot

be squared with the ADA's plain language, overall structure, and purpose; and

departs from the conclusions of two sister circuits that have considered the issue en

banc.  Rehearing en banc is therefore appropriate.

## CONCLUSION

For the foregoing reasons, the EEOC respectfully asks that the Court follow

the panel's suggestion and grant rehearing en banc.

Respectfully submitted,

P. DAVID LOPEZ                            /s/  Barbara L. Sloan_____
General Counsel                           BARBARA L. SLOAN
                                          Attorney
LORRAINE C. DAVIS                         EQUAL EMPLOYMENT
Acting Associate General Counsel          OPPORTUNITY COMMISSION
                                          131 M Street N.E.. 5th Floor
DANIEL T. VAIL                            Washington, DC  20507
Acting Assistant General Counsel          (202) 663-4721
                                          barbara.sloan@eeoc.gov

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because it has been prepared in a proportional

typeface using Microsoft Word 2007 with Times New Roman 14-point font.

<div style="margin-left:50%">

/s/ Barbara L. Sloan
Attorney for Equal Employment
Opportunity Commission

</div>

Dated April 20, 2012

# ADDENDUM

Equal Employment Opportunity Commission v. United Airlines,
No. 11-1774 (7th Cir. March 7, 2012)

In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 11-1774

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant*,

*v.*

UNITED AIRLINES, INC.,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10-cv-01699   **Harry D. Leinenweber**, *Judge*.

———————

ARGUED OCTOBER 20, 2011—DECIDED MARCH 7, 2012

———————

Before CUDAHY, KANNE, and SYKES, *Circuit Judges*.

CUDAHY, *Circuit Judge*.  In this case, the Equal Employ-
ment Opportunity Commission (EEOC) asks this court
to change its interpretation of the Americans with Disa-
bilities Act, 42 U.S.C. §§ 12101 *et seq.* (ADA). The EEOC
contends that the ADA requires employers to reassign
employees, who will lose their current positions due to
disability, to a vacant position for which they are quali-

fied. However, this court has already held, in *EEOC v. Humiston-Keeling*, 227 F.3d 1024, 1029 (7th Cir. 2000), that the ADA has no such requirement. The EEOC argues that the Supreme Court's ruling in *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), undermines *Humiston-Keeling*. Several courts in this circuit have relied on *Humiston-Keeling* in post-*Barnett* opinions, though it appears that these courts did not conduct a detailed analysis of *Humiston-Keeling*'s continued vitality. In accordance with this circuit's case law, we affirm the district court's holding that the ADA does not mandate reassignment. However, this circuit might reconsider the impact of *Barnett* on *Humiston-Keeling*.

In 2003, United Airlines set out Reasonable Accommodation Guidelines that address accommodating employees who, because of disability, can no longer do the essential functions of their current jobs even with reasonable accommodation. While the guidelines note that "transfer . . . [to] an equivalent or lower-level vacant position" may be a reasonable accommodation, the guidelines specify that the transfer process is competitive. Accordingly, an employee will not be automatically placed into a vacant position. Instead, employees needing accommodation will be given preference, meaning they can submit an unlimited number of transfer applications, they are guaranteed an interview and they will receive priority consideration over a similarly qualified applicant.

The EEOC filed suit in San Francisco, alleging that United's policy violates the ADA. The district court

granted United's motion to transfer the case to Illinois. The district court granted United's motion to dismiss the suit under Rule 12(b)(6). The district court noted that binding precedent, *EEOC v. Humiston-Keeling*, 227 F.3d 1024, 1028-29 (7th Cir. 2000) held that a competitive transfer policy does not violate the ADA. The court also rejected the EEOC's contention that the Supreme Court's decision in *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) undermined *Humiston-Keeling*.

This court reviews a dismissal under Rule 12(b)(6) *de novo*. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A complaint must provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2002) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This court construes the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the EEOC's] favor." *Tamayo*, 526 F.3d at 1081 (citing *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007)). We have jurisdiction to hear EEOC's appeal under 28 U.S.C. § 1291.

The district court noted that *Humiston-Keeling* is directly on point and has not been overruled by the Seventh Circuit. The district court is correct on both points. *Humiston-Keeling* involved a worker, Houser, who could no longer perform her conveyor job due to an injured arm. 227 F.3d at 1026. After taking a temporary greeter position, Houser applied for vacant clerical positions within the company. However she did not get

any of these jobs. *Id*. The EEOC brought suit, arguing the "reassignment form of reasonable accommodation . . . require[s] that the disabled person be advanced over a more qualified nondisabled person, provided only that the disabled person is at least minimally qualified to do the job, unless the employer can show undue hardship." *Id.* at 1027 (internal quotation marks omitted). This court rejected that assertion, holding the "ADA does not require an employer to reassign a disabled employee to a job for which there is a better applicant, provided it's the employer's consistent and honest policy to hire the best applicant for the particular job in question." *Id.* at 1029.

As there is a controlling case directly on point, the EEOC must convince this court to overrule its prior decision. This is no easy task. The doctrine of *stare decisis* holds that "the mere existence of certain decisions becomes a reason for adhering to their holdings in subsequent cases." *Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 583 (7th Cir. 2005). The EEOC's interpretation may in fact be a more supportable interpretation of the ADA, and here we think that this is likely. However, the EEOC must do more to force an abandonment of *stare decisis*. In order to provide this court with a compelling reason to deviate from precedent, the EEOC must show that *Humiston-Keeling* is inconsistent with an on-point Supreme Court decision or is otherwise incompatible with a change in statutory law.

The EEOC invites this court to overturn *Humiston-Keeling*, arguing that *Barnett* undercuts the reasoning of

*Humiston-Keeling*. In *Barnett*, the Supreme Court considered reassignment under the ADA in the context of a seniority system. 535 U.S. at 393-95. Robert Barnett injured his back while a cargo-handler for U.S. Airways. He invoked seniority and transferred to a mailroom position. *Id.* at 394. Later, at least two employees senior to Barnett intended to bid for the mailroom position. *Id.* Barnett claimed that because he was an individual with a disability capable of performing the essential functions of the mailroom job, the mailroom job was a reasonable accommodation mandated by the ADA. *Id.* at 394-95.

The Supreme Court first noted that "[t]he simple fact that an accommodation would provide a 'preference'—in the sense that it would permit the worker with a disability to violate a rule that others must obey—cannot, *in and of itself*, automatically show that the accommodation is not 'reasonable.'" *Id.* at 398 (emphasis in original). Instead, the Court outlined a case-specific approach: Once the plaintiff has shown he seeks a reasonable method of accommodation, "the defendant/employer then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id.* at 403. While Barnett's request for assignment to the mailroom was a "reasonable accommodation" within the meaning of the statute, the violation of a seniority system would present an undue hardship to any employer. *Id.* at 403.

The EEOC points out that US Airways relied heavily on *Humiston-Keeling* and, more importantly, that the Court flatly contradicted much of the language of

*Humiston-Keeling* in *Barnett*. US Airways argued that it was not required to grant a requested accommodation that would violate a disability-neutral rule, picking up the argument from *Humiston-Keeling* that the ADA is "not a mandatory preference act" but only a "non-discrimination statute." The Court rejected this anti-preference interpretation of the ADA, noting that this argument "fails to recognize what the Act specifies, namely, that preferences will sometimes prove necessary to achieve the Act's basic equal opportunity goal." 535 U.S. at 397. Merely following a "neutral rule" did not allow US Airways to claim an "automatic exemption" from the accommodation requirement of the Act. *Id.* Instead, US Airways prevailed because its situation satisfied a much narrower exception based on the hardship that would be imposed on an employer utilizing a seniority system.

While EEOC's argument may be persuasive, the analysis of *Barnett*'s impact on *Humiston-Keeling* is further complicated by the fact that we are not the first panel to consider this issue. This court has previously considered *Barnett*'s relationship to *Humiston-Keeling*, albeit in an abbreviated fashion without the benefit of briefing. In *Mays v. Principi*, 301 F.3d 866 (7th Cir. 2002), this court relied on *Humiston-Keeling* in finding that an employer did not violate the duty of reasonable accommodation in the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*, by giving an administrative nursing position to a better qualified applicant, rather than to a dis-

Case: 11-1774    Document: 25    Filed: 03/07/2012    Pages: 31

abled employee needing reassignment.[1] *Mays*, 301 F.3d at 871-72. The *Mays* Court noted that the recently handed down *Barnett* decision actually bolstered *Humiston-Keeling*. In so doing, the *Mays* Court equated seniority systems with any normal method of filling vacancies. "[*Barnett*] holds that an employer is not required to give a disabled employee superseniority to enable him to retain his job when a more senior employee invokes an entitlement to it conferred by the employer's seniority system. If for 'more senior' we read 'better qualified,' for 'seniority system' we read 'the employer's normal method of filling vacancies,' and for 'superseniority' we read 'a break,' *U.S. Airways* becomes our case." *Id*. at 872 (internal citation omitted).

The EEOC argues that the *Mays* Court's assertion that a best-qualified selection policy is essentially the same as a seniority system is simply wrong. In equating the two, the *Mays* Court so enlarges the narrow exception set out in *Barnett* as to swallow the rule. To bolster this critique, the EEOC points out the relative rarity of seniority systems and the distinct challenges of mandating reassignment in a system where employees are already entitled to particular positions based on years of employment.

But the *Mays* Court is not the only court to treat *Humiston-Keeling* as good law. On two other occasions after the Supreme Court's ruling in *Barnett*, this court has

---

[1] Instead, the employer placed the disabled employee in a clerical position.

relied on *Humiston-Keeling*: *Craig v. Potter*, 90 F. App'x 160 (7th Cir. Feb. 20, 2004), and *King v. City of Madison*, 550 F.3d 598 (7th Cir. 2008).[2] In short, this court has made no move to abandon *Humiston-Keeling* after *Barnett*, bolstering the district court's conclusion that *Barnett* does not overrule or undermine *Humiston-Keeling*. While these decisions have not provided detailed analysis, their mere existence and consistent interpretations compel this court to find that *Humiston-Keeling* remains good law.

The EEOC asks us to adopt the position of our sister Circuits, the Tenth in *Smith v. Midland Brake, Inc.*, 180 F.3d 1154 (10th Cir. 1999) (*en banc*) and the D.C. in *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*), holding that the ADA requires reassignment to vacant positions. The EEOC argues that both decisions conduct a more thorough analysis of the statutory language and legislative history of the ADA than this court did in *Humiston-Keeling*. But this argument cannot do much work, for the EEOC is merely returning to its position that this court in *Humiston-Keeling* misinterpreted the ADA. Instead, the EEOC must show that this court's established interpretation of the ADA in *Humiston-Keeling* is no longer viable after *Barnett*.

For its part, United argues that this court should not abandon *Humiston-Keeling*, in part because the Eighth Circuit explicitly adopted the reasoning of *Humiston-Keeling* in *Huber v. Wal-Mart Stores*, 486 F.3d 480, 483-84 (8th

---

[2] However, neither of these cases mentions *Barnett*.

Cir. 2007). The Eighth Circuit's wholesale adoption of *Humiston-Keeling* has little import. The opinion adopts *Humiston-Keeling* without analysis, much less an analysis of *Humiston-Keeling* in the context of *Barnett*. A circuit split will remain even if this court adopts the position of the Tenth and D.C. Circuits. However, there is no harm in lessening this split if, in fact, *Barnett* undermines *Humiston-Keeling*. In that respect, the present panel of judges strongly recommends *en banc* consideration of the present case since the logic of EEOC's position on the merits, although insufficient to justify departure by this panel from the principles of *stare decisis*, is persuasive with or without consideration of *Barnett*.

This court has previously determined that *Barnett* does not conflict with *Humiston-Keeling*. Courts within this circuit have continued to cite *Humiston-Keeling* favorably. As *Humiston-Keeling* is still good law and directly on point, the district court rightly concluded that the ADA does not require employers to reassign employees, who will lose their current positions due to disability, to a vacant position for which they are qualified. For this reason, the judgment of the district court is AFFIRMED.

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing petition for rehearing en banc of the Equal Employment Opportunity Commission with the Clerk of the Court this 20th day of April, 2012, by uploading an electronic version of the petition and appendix via this Court's case management/Electronic Case Filing System (CM/ECF).  The following participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.


Charis A. Runnels
Nina G. Stillman
MORGAN LEWIS & BOCKIUS LLP
77 West Wacker Drive, 5th Floor
Chicago, IL  60601


/s/ Barbara L. Sloan
BARBARA L. SLOAN